THE WIGGINS FERRY COMPANY

*v.*

THE OHIO AND MISSISSIPPI RAILWAY COMPANY.

| 94 | 83 |
|---|---|
| 136 | 470 |
| 94 | 83 |
| 174 | 453 |
| 94 | 83 |
| 176 | 375 |
| 94 | 83 |
| 183 | 277 |
| 94 | 83 |
| 206 | 3 56 |

1. CONVEYANCE—*of the estate granted.*  A deed to a railway company conveying no land, but only the right to construct, maintain and use, in, through, upon and over certain lands, all such railroad tracks, depots, warehouses, etc., as the company should find necessary or convenient for transacting its business, and to keep thereon, without disturbance, all property belonging to or in the possession of the company, to have and to hold the said rights and easements so long as the same should be used for such purposes, and for no other, even forever, passes only an easement which is a freehold of inheritance, though only a bare or qualified fee, which may be defeated.

2. A grantee may take a fee in any kind of hereditament, either corporeal or incorporeal; but there is this distinction between the two species: that a man is seized in his *demesne* as of fee of a corporeal hereditament, while of an incorporeal hereditament he can only be said to be seized as of fee, and not in his *demesne*, which means property in the thing itself.

3. ESTATE—*base or qualified fee.*  A base or qualified fee is such as has a qualification subjoined thereto, and which must be determined whenever the qualification annexed to it is at an end.  It is a fee, because it may possibly endure forever; and it is base or qualified, because its duration depends upon collateral circumstances which qualify and debase the purity of the donation.

4. COVENANTS—*when they run with the land.*  A covenant runs with the land when either the liability for its performance or the right to enforce it passes to the assignee of the land itself.  In order that the covenant may run with the land, its performance or non-performance must affect the nature, quality

or value of the property demised, independent of collateral circumstances, or it must affect the mode of enjoyment, and there must be a privity between the contracting parties.

5.   Where the relation of tenure is created by a grant, all the covenants of the grantee for himself and his assignees, which affect the land granted, will be a charge upon it, and bind every one to whom it may subsequently come by assignment.

6.   Where a ferry company granted certain rights or easements to a railroad company over two tracts of land, which were assumed to be a distinct property from the ferry franchise, in consideration of which the railroad company covenanted with the ferry company always to employ the latter to transport over the Mississippi river all property and persons which might be taken across the river, either way, by the railroad company, either for the purpose of being transported on the railroad of the grantee or having been brought to said river upon said railroad, so that the ferry company, its representatives and assigns, owners of the ferry, should have the profits of the transportation, etc.: *Held*, that as the covenant was for the benefit of the owners of the ferry, and not for the owners of the land out of which the easement was granted, a separate and distinct property, the ferry company could not maintain an action at law against a party succeeding to the rights, property and franchises of the railroad company for a breach of the covenant.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

This was an action of assumpsit, brought by the Wiggins Ferry Company, against the Ohio and Mississippi *Railway* Company, to the April term, 1876, of the St. Clair circuit court.

The Ohio and Mississippi Railroad Company was chartered by the State of Illinois, February 12, 1851, (Private Laws of Illinois, p. 89,) and various amendments to the charter were passed up to the 27th February, 1854,—by one of which it was authorized to extend its road to the Mississippi river.

The Wiggins Ferry Company is also a corporation organized, many years since, under a charter of the State of Illinois, and lawfully empowered by it to purchase, own, sell and convey real estate and interests therein; and, on the 1st day of April, 1858, the last named company, by deed of that date, " for and in consideration," as expressed therein, " of the

future observing, fulfilling and keeping by the party of the second part of the covenants and stipulations thereinafter contained, to be kept, observed and fulfilled by the party of the second part, and also in consideration of $1 paid by the party of the second part," etc., did "give, grant and convey," unto the Ohio and Mississippi Rail*road* Company, as party of the second part, " the right to construct, maintain and use, in, through, upon and over the piece or parcel of ground hereinafter described, all such railroad tracks, depots, warehouses, and other buildings and erections as the said party of the second part shall find to be necessary or convenient to be constructed, maintained or used for the purpose of transacting the business of the said party of the second part, and to keep thereon, without disturbance, all property of every description belonging to, or which may be in the possession, charge or custody of, the said party of the second part, and to take upon and over the said piece or parcel of ground all persons and property, and to use the said piece or parcel of ground in the transaction of the business of the said party of the second part, as the said party of the second part may find necessary or convenient"—and then follows the descriptions of two pieces of land, after which is the following "*tenendum:*" "To have and to hold the said several rights and easements in the said two several parcels of ground above described, unto the said party of the second part, so long as the same shall be used and employed for the uses and purposes of the Ohio and Mississippi railroad, as herein specified, and for no other purposes, even forever; and the party of the second part, as the consideration upon which the said easements and rights are hereby granted, covenant with the party of the first part, as follows:"

Then follow the covenants, the only important one of which, in the present controversy, is the third, which is as follows:

"Third. The said party of the second part will always employ the said Wiggins Ferry Company, party of the first part, to transport for said party of the second part across the said

river, all persons and property which may be taken across the said river, either way, by said party of the second part, to or from Bloody Island, either for the purpose of being transported on the railroad of said party of the second part, or having been brought to said river upon the said railroad, so that the said party of the first part, their legal representatives or assigns, owners of the said Wiggins Ferry, shall have the profits of the transportation of all passengers, persons and property taken across the said river either way by said party of the second part, either to or from the city of St. Louis, the said party of the first part, its legal representatives or assigns, owners of the said Wiggins Ferry, charging for such ferriage as low rates as charged by them to any other party between the city of St. Louis and the said island called Bloody Island, in the State of Illinois, which said ferriage shall be paid by the said party of the second part to the said party of the first part, their legal representatives or assigns, owners of the said Wiggins Ferry. The said party of the first part agrees to land a boat at the depot grounds of the party of the second part so long as desired by the said party of the second part, to receive and deliver their freight and passengers with reasonable dispatch, and also to furnish a boat to connect with their night trains upon the payment of a reasonable compensation, whenever the same can be done with safety, navigation permitting." The deed is *inter partes,* being sealed by the Ohio and Mississippi *Railroad* Company as well as by the Wiggins Ferry Company.

On the 5th of February, 1861, the Ohio and Mississippi *Railway* Company was incorporated by an act of the Illinois legislature for the purpose of purchasing and taking a conveyance of all the railroad property, real and personal, rights and franchises, of the Ohio and Mississippi *Railroad* Company, either by private contract or at any judicial sale thereof which might thereafter take place.

At the March term, 1862, of the United States Circuit Court for the Southern District of Illinois, a decree of foreclosure

was entered against said Ohio and Mississippi *Railroad* Company, and a sale of its road, franchises, etc., was ordered, to satisfy certain claims and demands secured by mortgage.

On the 2d day of June, 1862, the said Ohio and Mississippi *railroad,* and the property, real and personal, rights and franchises of the Ohio and Mississippi *Railroad* Company were sold under that decree and purchased by the Ohio and Mississippi *Railway* Company.

This suit is to recover for a breach of the third covenant of the Ohio and Mississippi *Railroad* Company above set out. It is averred in the declaration that, "On the 14th of June, 1862, the defendant, having full power and lawful authority so to do, acquired, by purchase, all the property, powers, privileges, rights and franchises of said *railroad* company, including the said contract and the lands therein described, and then and there took possession of the same, to which purchase and possession the plaintiff then and there assented, by means whereof the defendant has been from thence hitherto, and still is, under and by virtue of said contract, purchase and possession aforesaid, assented to as aforesaid, in the quiet and peaceable possession, use and enjoyment of said lands therein described, and the defendant thereby then and there became the legal representative and assignee, and succeeded to all the rights and privileges of the said *railroad* company in and to the said contract, and thereby assumed and became subject to all the covenants, stipulations and obligations thereof," etc.

The breach averred is, that the defendant therein, "although often requested, has wholly failed and refused to do, but, on the contrary thereof, the defendant, on May 1, 1871, and on divers other days and times, and on every day between that day and the commencement of the suit, at, etc., took across the said Mississippi river, from said Bloody Island to said city of St. Louis, persons and property which had been brought to said river upon the railroad mentioned in said contract, amounting in the aggregate to, to-wit: 300,000 persons, 1000 locomotives, 10,000 omnibuses, 5000 baggage wagons, 40,000

freight wagons, 10,000 freight cars, 10,000 passenger cars, 5000 mail cars, 5000 other kinds of cars, 500,000 tons of merchandize, 500,000 horses, 500,000 head of cattle, 500,000 sheep, 500,000 hogs, 500,000 tons of coal, 500,000 tons of other kinds of freight, and 500,000 tons of other kinds of property; and the defendant also then and there took across the said river from said city of St. Louis to said Bloody Island, for the purpose of being transported on the said railroad, a like number of persons and a like quantity of property as above set forth as having been taken across the said river from said Bloody Island to said city of St. Louis, and defendant did not then and there employ plaintiff to transport for defendant across said river, either way, any of said persons or property which were taken across the said river as aforesaid, by defendant, so that plaintiff should have the profits of the transportation of said persons and property across the said river as provided in said contract, and as defendant had promised, but wholly neglected and refused so to do; and on the contrary thereof, defendant, without the consent and against the protest of plaintiff, then and there employed other persons and corporations to transport the said persons and property across the said river as aforesaid, to-wit: the St. Louis Transfer Co., the Madison Ferry Co., the Illinois and St. Louis Bridge Co., the East St. Louis and Carondelet Railway, the Union Railway and Transit Co., and divers other persons and corporations,— contrary to the letter and spirit, true intent and meaning of the said contract and of defendant's said undertaking and promises, and in direct violation thereof and of the covenants, obligations and stipulations of said contract; and defendant then and there failed and refused to pay plaintiff the profits of the transportation of said persons and property across the said river, although often requested and demanded, by means whereof plaintiff has been and is deprived of the profits of the transportation of said persons and property across the said river as aforesaid, which profits amount in the aggregate to the sum of $150,000.  Yet defendant, although often requested

and demanded, has not paid the said several sums of money or any or either of them or any part thereof to plaintiff. To plaintiff's damage $150,000."

The defendant demurred to the declaration, and the court below sustained the demurrer and gave judgment thereon for the defendant.

From this decision the plaintiff appealed to this court and assigns for error,—1st. That the court below erred in sustaining the demurrer to the declaration; 2d. The court below erred in rendering judgment on the demurrer, in favor of appellee and against appellant, for costs.

Mr. H. P. BUXTON, for the appellant:

On the question whether the assignee of the easement granted by the owners of the ferry were bound by the covenants of its assignor, the following authorities are cited: *Jacques* v. *Short,* 20 Barb. 269; *Main* v. *Feathers,* 21 id. 647; Taylor's Landlord and Tenant, secs. 437, 499; *Astor* v. *Lent,* 6 Bosw. 612; *Morton* v. *Pinckney,* 8 id. 139; *Dorrance* v. *Jones,* 17 Ala. 630; *Hanson* v. *Stevenson,* 1 B. & Ald. 307; *D'Aquin* v. *Armant,* 14 La. An. 217; *Sutliff* v. *Atwood,* 15 Ohio St. 186.

A mortgagee, or direct purchaser from a tenant, or one who buys his right at a sheriff's sale, assumes all the tenant's original relations to his landlord. *Willison* v. *Watkins,* 3 Peters, 50; *McMurphy* v. *Minot,* 4. N. H. 251; *Prettyman* v. *Walston,* 34 Ill. 175; *Gordon* v. *George,* 12 Ind. 408; *Lee* v. *Payne,* 4 Mich. 106.

Where a person, other than the lessee, is in the possession of leasehold premises under circumstances which imply an assignment of the lease, he is liable to the landlord, on the covenant in the lease, to pay rent during his occupation of the premises, by virtue of his privity of estate. *Glover* v. *Wilson,* 2 Barb. 264.

An assignee of a lease, by accepting an assignment thereof, takes it subject to the payment of the rent which shall thereafter become due. *Graves* v. *Porter,* 11 Barb. 592; *Cox* v.

*Fenwick,* 4 Bibb, 538; *M'Cormick* v. *Young,* 2 Dana, 294; *Blake* v. *Sanderson,* 1 Gray, 332; *Overman* v. *Sanborn,* 27 Vt. 54.

In an action for rent by the lessor against a person declared to be an assignee of the lessee, if it appears he is in possession under the lease with the assent of the lessee, and has all the benefits of an actual assignee, he will be estopped from insisting that he is assignee only by parol agreement. *Carter* v. *Hammett,* 12 Barb. 253.

All the duties and obligations of a tenant to his landlord devolve upon his sub-tenant, and upon every one, in succession, to whom the possession is transferred. *Elms* v. *Randall,* 4 Dana, 519.

Messrs. G. & G. A. KŒRNER, and Mr. CHARLES A. BEECHER, for the appellee:

Even if there had been a regular assignment from the old to the new company, there would be no such privity between the grantor and the defendant as to enable the former to sue the latter for a breach of the covenant of the old company. *Mayer* v. *Patterson,* 10 East, 130; *Flight* v. *Glossoph,* 2 Bing. New Cases, 128; *Masary* v. *Southworth,* 9 Ohio St. 348.

It is a well established principle that when, either under a general or special law, a purchaser of a railroad under a foreclosure sale becomes a corporation, such new corporation is not liable for the obligations of the old company. *Stewart's Appeal,* 72 Pa. St. 291; *Smith* v. *Chicago and Northwestern Railroad Co.* 18 Wis. 17; 33 Iowa, 422.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

It is not pertinent here to inquire whether appellant has a remedy in equity, or in some other form of action at law. The question is, simply, is it entitled to recover in this action? The suit is against one corporation averred to be the assignee of another, upon a covenant made by the alleged assignor.

There is no express undertaking, averred in the declaration, by the assignee, to perform the covenant of the assignor, nor is there any averment therein from which such an undertaking can he held to be legally implied. The only ground upon which there can be any reasonable pretence to base an argument in favor of the right to recover is, that the covenant is one which, in legal contemplation, runs with the land; and it will, therefore, only be important to inquire whether this is such a covenant.

It was said, in *Dorsey* v. *St. Louis, Alton and Terre Haute Railroad Co.* 58 Ill. 67 : "A covenant is said to run with the land when either the liability for its performance or the right to enforce it passes to the assignee of the land itself. A covenant is said to run with the reversion when the liability to perform it or the right to enforce it passes to the assignee of the reversion."

"In order that a covenant may run with the land," says Taylor in his work on Landlord and Tenant, (2d ed.) 167, § 261, "its performance or non-performance must affect the nature, quality or value of the property demised, independent of collateral circumstances, or must affect the mode of enjoyment. It must not only concern the land, but there must also be a privity of estate between the contracting parties,—for if a party covenant with a stranger to pay a certain rent, in consideration of a benefit to be derived under a third person, it can not run with the land, not being made with the person having the legal estate."

It is said, in Rawle on Covenants for Title, p. 341, " When the statute of *quia emptores* abolished subinfeudation, privity of tenure and estate no longer existed upon conveyances which passed the fee and left no reversion in the donor; and it became a rule that covenants which imposed any charge, burden or obligation upon the land, were held not to be incident to it, and therefore incapable of passing with it to an assignee; thus, if the owner of land granted it in fee, reserving to himself a rent which the grantee covenanted to pay, here, though

the covenant was to be performed out of the land, yet the assignee of the covenantor would hold the land discharged from its liability. But, on the other hand, if the covenant were one intended to benefit the land, it was held to be incident to it, even if made by a stranger, and, therefore, whoever might become the owner of the land would also be entitled to the benefit of the covenant." Where, however, the relation of tenure is created by a grant, all the covenants of the grantee for himself and his assignees, which affect the land granted, will be a charge upon it; and bind every one to whom it may subsequently come by assignment. Notes to *Spencer's case,* 1 Smith's Leading Cases, (part 1) 7th Am. ed. 169.

We are of opinion the conveyance by appellant to the Ohio and Mississippi Railroad Company did not create the relation of landlord and tenant, and hence that the case should be considered divested of the element of tenure. That instrument conveys no land, but merely "the right to construct, maintain and use, in, through, upon and over" the grounds therein described, "all such railroad tracks, depots, warehouses and other buildings and erections as the said party of the second part shall find to be necessary or convenient to be constructed, maintained or used for the purpose of transacting the business of the said party of the second part, and to keep thereon, without disturbance, all property of every description belonging to or which may be in the possession, charge or custody of the said party of the second part," etc., etc. The *tenendum* is: "To have and to hold the said several rights and easements in the said two several parcels of ground above described, unto the said party of the second part, so long as the same shall be used and employed for the uses and purposes of the Ohio and Mississippi railroad as herein specified, and for no other purposes, even forever." This is clearly but an easement. Washburne on Easements, p. 5; 3 Kent's Com. (8th ed.) 512. It is not an estate for life, because neither expressly nor by implication is its dura-

tion made to depend upon the life of any one.   2 Blackstone's
Com. (Sharswood's ed.) 119.   It is not an estate for years,
because there is no fixed period for the duration of the estate.
2 Blackstone's Com. (Sharswood's ed.) 140; Taylor on Land-
lord and Tenant, p. 32, § 54.   It is not an estate at will, for
there is no pretence that appellant reserved the right to ter-
minate the use of the Ohio and Mississippi Railroad Company
at its will.   2 Blackstone (Sharswood's ed.) 144, 145.   In
our opinion the estate is a freehold of inheritance.   Wash-
burne on Easements, pp. 9-10; 3 Kent's Com. (8th ed.) 512.

It is said in 2 Blackstone's Com. 104, (Sharswood's ed.) :
"Taking  *  *  *fee*  *  *  in its secondary sense, as a
state of inheritance, it is applicable to and may be had in any
kind of hereditaments, either corporeal or incorporeal.   But
there is this distinction between the two species of heredita-
ments,—that, of a corporeal inheritance a man shall be said
to be seized *in his demesne, as of fee;* of an incorporeal one,
he shall only be said to be seized *as of fee,* and not in his
demesne.   For, as incorporeal hereditaments are in their
nature collateral to and issue out of lands and houses, their
owner hath no property, *dominicum,* or demesne in the thing
itself, but hath only something derived out of it, resembling
the *servitudes,* or services, of the civil law.   The *dominicum*
or property is frequently in one man, while the appendage or
service is in another.   Thus, Caius may be seized *as of fee* of
a way leading over the land of which Titius is seized *in his
demesne* as of *fee."*

It is true, the estate here may not endure forever; it may
be terminated by the failure to use and employ the rights and
easements granted in the manner prescribed in the grant; but
if they shall be so used and employed the grant is forever.
And this seems to meet Blackstone's definition of a *qualified* or
*base* fee, which he thus defines and illustrates :

" A base or qualified fee is such a one as hath a qualifica-
tion subjoined thereto, and which must be determined when-
ever the qualification annexed to it is at an end.   As, in the case

of a grant to A and his heirs, *tenants of the manor of Dale.* In this instance, whenever the heirs of A cease to be tenants of that manor, the grant is entirely defeated. So, when Henry VI granted to John Talbot, lord of the manor of Kingston Lisle in Berks, that he and his heirs, lords of the said manor, should be peers of the realm by the title of barons of Lisle: here John Talbot had a base or qualified fee in that dignity, and the instant he or his heirs quitted the seignory of this manor, the dignity was at end. This estate is a fee, because by possibility it may endure forever in a man and his heirs; yet, as that duration depends upon the concurrence of collateral circumstances, which qualify and debase the purity of the donation, it is therefore a qualified or base fee."

It remains, then, only to inquire, does the performance or non-performance of this covenant affect the nature, quality or value of the property demised, independent of collateral circumstances, or the mode of its enjoyment?

It is not shown that the two parcels of lands in which this easement is granted are any part of the ferry of appellant. For aught that appears, these properties are totally distinct and independent of each other, and we are authorized to assume that a sale and conveyance of the one would not necessarily affect the other.

This covenant is not to do anything upon or about the easement granted to the Ohio and Mississippi Railroad Company, nor does it in anywise affect the parcels of land in which the easement is granted. Its language is: "The said party of the second part will always employ the said Wiggins Ferry Company, party of the first part, to transport for the said party of the second part across the said river all persons and property which may be taken across the said river, either way, by the said party of the second part to or from Bloody Island, either for the purpose of being transported on the railroad of said party of the second part, or having been brought to said river upon the said railroad, so that the said

party of the first part, *their legal representatives or assigns, owners of the said Wiggins Ferry, shall have the profits of the transportation,*" etc., etc. So, it is the owner of the ferry, and not the owner of the parcels of land, for whose benefit the covenant is made. Hence if appellant had conveyed its ferry to A, and its parcels of land to B, A alone would have been injured by a breach of the covenant. It is impossible to conceive how the owner of the parcels of land, merely as such, could be injured by a breach of the covenant. It adds nothing to the value of the parcels of land, and gives nothing to him claiming as owner, merely because he is owner. It is all for the benefit of the owners of the ferry, a totally separate and distinct property. It would be difficult to give a better illustration of a purely collateral covenant.

It has been said, whether a covenant will or will not run with land does not, however, so much depend on whether it is to be performed on the land itself, as whether it tends directly or necessarily to enhance its value, or render it more beneficial and convenient to those by whom it is owned or occupied. *Masary* v. *Southworth,* 9 Ohio N. S. 340. Following this form of expression, the easement here granted is in the two parcels of land, not in the ferry, while the covenant relates to and affects the ferry only. Undoubtedly the covenant enhances the value of the ferry, or renders it more beneficial, but this has nothing to do with the two parcels of land in which the easement is granted. See *Webb* v. *Russell,* 3 Term R. 393, 402; *Bally* v. *Wells,* 3 Wilson, 25–29; *Hurd* v. *Curtis,* 19 Pickering, 459; *Brewer* v. *Marshall,* 3 C. E. Greene, 337; 4 id. 537, 547; *Spencer's case,* and notes, 1st part 1 Smith's Leading Cases.

It may be questionable whether this easement, under the allegations before us, legally passed to the assignee, the present appellee, at all, and of course, if it did not, no covenant could run against appellee as being a charge upon that easement. But upon this we express no opinion. We have assumed, without examination, that the declaration sufficiently avers

the assignment of the easement; and we have also assumed, as matter of law, (of the correctness of which, however, we do not apprehend there can be much doubt,) that the easement is one with which, under a different supposable state of facts, a covenant might run as a covenant running with the land.

Our decision goes no further than the matters specially noticed. For the reasons given, we think the court below properly sustained the demurrer to the declaration. Its judgment is therefore affirmed.

*Judgment affirmed.*