George Atwood, Appellee, v. Chicago, Milwaukee & St. Paul Railway Company, Appellant.

Gen. No. 7,123.

1. COVENANTS—*release from liability for fire in lease of railroad right of way as running with land.* A clause in a lease of a grain elevator site on a railroad right of way releasing the railroad lessor from all liability for damage by fire to the elevator buildings was personal with the original lessee and is not a covenant running with the land which binds his successor in interest, where the evidence shows that the lease was executed many years after the elevator was constructed, that prior thereto the buildings were constructed and the site used without any written agreement, that afterwards the lessee conveyed adjoining lands to plaintiff, his son, without any mention of the lease, and gave him the elevator buildings as a gift of personalty without mention or assignment of the lease, the existence of which was unknown to the son until after the fire in question, and where the clause in question does not concern the occupation or enjoyment of the land or the building located thereon but is merely a collateral provision.

2. FRAUDS, STATUTE OF—*verbal transfer of leasehold as binding transferee.* The provisions of a lease from defendant railroad company to plaintiff's father of a grain elevator site on the railroad right of way exempting the railroad from all liability for damages to the elevator buildings from fire are not binding upon plaintiff, to whom his father transferred the elevator building as a gift of personal property without any writing, where the clause releasing the railroad from liability is not a covenant running with the land.

3. RAILROADS—*liability for fires along right of way.* A finding by the jury that the fire which destroyed plaintiff's grain elevator was caused by the negligence of defendant railroad company will

not be reversed as against the weight of evidence where it is shown that the elevator was located on defendant's right of way within a few feet of the main track, that one train passed the elevator forty minutes before the fire was discovered and another eight minutes before, and that the fire started on the outside of the roof nearest to the track, although it is also shown that no fire was visible when the second locomotive passed and that such locomotive was equipped with a spark arrester of approved type and in good repair and that it passed the elevator with the engine exhaust closed so that no sparks could be drawn through the stack.

4.  RAILROADS—*instruction as to proof of negligence in setting fire along right of way*.  In an action against a railroad for damages from the destruction of a grain elevator by fire, an instruction that it is not necessary that any person testify to having actually seen sparks or fire communicated from the locomotive to the building and that if the facts and circumstances shown by the evidence were such that a reasonable person would conclude therefrom that a spark was communicated from the engine to the building, then such facts and circumstances, provided they constitute a preponderance of the evidence, are sufficient to show that fire was communicated to the building from the engine, is not erroneous as assuming facts not proven or for omitting a defense offered by defendant.

Appeal by defendant from the Circuit Court of Winnebago county; the Hon. ROBERT K. WELSH, Judge, presiding. Heard in this court at the October term, 1922. Affirmed. Opinion filed May 17, 1923.

FISHER, NORTH, WELSH & LINSCOTT, for appellant; C. S. JEFFERSON, of counsel.

GARRETT, MAYNARD & HULL, for appellee.

MR. JUSTICE PARTLOW, delivered the opinion of the court.

Appellee, George Atwood, began suit in the circuit court of Winnebago county against the appellant, Chicago, Milwaukee and St. Paul Railway Company, to recover damages for the loss by fire of a grain elevator and contents belonging to the appellee. There was a trial by jury, verdict for the appellee for $4,500 and this appeal was prosecuted to review the judgment entered upon the verdict.

The right of way of the appellant was about 100 feet wide and extended north and south. Just south of Roscoe Siding, in Winnebago county, the right of way crossed a public highway at right angles. About 60 feet north of this intersection, on the west side of the main track, was a station known as Roscoe Siding. At the southeast corner of this intersection, the land, prior to 1919, was owned by J. B. Atwood, the father of the appellee. In 1893, the appellant gave to J. B. Atwood verbal permission to build an elevator at this southeast intersection on the right of way of the appellant, and a wooden structure, with a shingle roof, was erected and was used for storing, loading and marketing grain. There was a sidetrack between the elevator and the main track. It was 50 feet from the center of the main track to the east right of way line. The elevator stood 21 feet east of the main track, about 70 feet south of the public highway, and was about 28.8 feet on the right of way. There was a driveway 9.2 feet wide, which went through a scale house, and extended along the east side of the elevator. The scale house was not on the right of way but was on Atwood's land. These buildings were used by J. B. Atwood from 1893 until 1906 without any written agreement with appellant. On December 27, 1906, a written lease was executed between appellant and J. B. Atwood. This lease provided that in consideration of the sum of $1.00 and on account of their mutual and independent agreements therein, J. B. Atwood leased from appellant the land upon which the elevator stood for one year from August 1, 1906, and thereafter until sixty days after either party should give to the other written notice of its or his desire to terminate the same. Another tract of land was by the same instrument leased by J. B. Atwood to the appellant for a stock-loading yard. There was attached to the lease a plat showing the lands leased and a complete description

of both tracts was in the lease. The third clause of the lease was as follows: "Third. The party of the second part (J. B. Atwood) hereby releases the party of the first part from all liability by reason of any injury to or destruction of any property owned by the party of the second part or in which he is interested, now or hereafter placed upon any part of said premises to him demised and hereinabove described, when such injury or destruction is the result of fire caused by the negligent condition or operation of the railroad of said party of the first part, or its engine or cars, or by reason of any other cause whatsoever."

On November 2, 1909, J. B. Atwood conveyed to appellee by deed his farm at this southeast intersection, but the deed made no reference to the lease of December 27, 1906, and was subject to no conditions. On the same date, J. B. Atwood gave to appellee the elevator on the right of way. This was considered as a gift of personal property from father to son, but the lease was not produced or assigned or even mentioned at that time. Appellee took possession of the elevator and operated it until it was destroyed by fire. On May 20, 1920, the day of the fire, at 3:20 p. m., a train consisting of an engine and a way car, went north but did not stop at Roscoe Siding. At 3:52 on the same day a passenger train, consisting of an engine, a baggage car and two coaches, went north. About 4 o'clock a man and his wife were going east along the highway just north of the elevator. When they were about 150 feet west of the track, they saw smoke coming from the roof of the engine house, which was on the north end of the elevator. The fire was on the outside, on the west side of the building near the north end, about half way up the roof. There was no train in sight at that time. They gave the alarm but the building was

entirely destroyed, together with its contents, consisting of a large amount of grain.

The declaration charged that appellant negligently suffered its engines to be operated without proper screens or sieves to arrest the cinders and sparks, and allowed cinders and sparks to emerge from the stack and fly onto the property of the appellee, by means whereof the building was set on fire and destroyed. To the declaration appellant filed the general issue and a special plea, which set up the lease of December 27, 1906, and alleged that by this lease appellant was released from all damages resulting from the burning of the elevator and contents. Appellee demurred to the special plea but the demurrer was overruled, whereupon appellee filed an additional count to the declaration in which it was alleged that the elevator was owned by the appellee and situated upon the lands of appellant, and was used for elevator purposes; that the appellee was permitted and invited by the appellant to use the land without charge so the appellant could haul the grain for the appellee to and from his elevator and thereby derive a profit.

The first question for determination is whether or not appellant was released under paragraph three of the lease of December 27, 1906, from liability for damages. It is the contention of the appellant that the third clause of the lease was a covenant running with the land, and for that reason was binding upon appellee, and relieved the appellant from all liability. On the other hand, it is claimed by the appellee that clause three is not a covenant running with the land; that its provisions were personal to J. B. Atwood; that the lease was never assigned to or accepted by the appellee; that there was no privity of contract or estate between appellant and appellee; that appellee was a mere invitee of appellant and occupied

the land as such; that for all these reasons appellant was not released from liability.

In order that appellant may be released from liability for the destruction of the property under the charge in the declaration, it is necessary either that the provisions of the third clause of the lease be held to be a covenant running with the land, or that there be a privity of estate between the appellant and the appellee relative to the third clause, and it be held to be binding on the appellant.

A railroad company may, by contract, exempt itself from liability for the burning of a building on its right of way or adjacent thereto, although such burning be the result of negligence on the part of the railroad company. *Checkley v. Illinois Cent. R. Co.,* 257 Ill. 491; *Bartee Tie Co. v. Jackson,* 281 Ill. 452; *Samuel v. Wabash R. Co.,* 193 Ill. App. 521. The test as to whether a covenant runs with the land, or is merely personal, is whether the covenant concerns the thing granted and the occupation or enjoyment of it, or is a collateral and personal covenant not immediately concerning the thing granted. If a covenant concerns the land and the enjoyment of it, its benefit or obligation passes with the ownership, but to have that effect the covenant must respect the thing granted or demised and the act to be done or permitted must concern the land or estate conveyed. *Hansen v. Meyer,* 81 Ill. 321; *Purvis v. Shuman,* 273 Ill. 286. Whether a covenant will or will not run with the land does not depend so much upon whether it is to be performed on the land itself as on whether it tends directly or necessarily to enhance its value or render it more beneficial and convenient to those by whom it is owned or occupied, for, if this be the case, every successive assignee of the land will be entitled to enforce the covenant. *Louisville & N. R. Co. v. Illinois Cent. R. Co.,* 174 Ill. 448; *Gibson v. Holden,* 115 Ill. 199. A covenant which runs with

the land can do so only where there is a subsisting privity of estate between the covenantor and the covenantee, that is, when the land itself, or some estate or interest therein, even though less than the entire title, to which the covenant may attach as its vehicle of conveyance, is transferred. If there is no privity of estate between the contracting parties, the assignee will not be bound by nor have the benefit of any covenant between the contracting parties, although it may relate to the land he takes by assignment or purchase, from one of the parties to the contract. In such a case the covenants are personal and collateral to the land. On the other hand, if there is a privity of estate, a covenant which may run with the land will pass as an incident to a subsequent conveyance. *Fitch v. Johnson,* 104 Ill. 111; *Wiggins Ferry Co. v. Ohio & M. Ry. Co.,* 94 Ill. 83; *Dalton v. Taliaferro,* 101 Ill. App. 592. An assignee, when not named, is not bound by a covenant, except where it relates to a thing *in esse* at the time, and, when named, he is not bound by a covenant collateral to the land, but only for things to be done on or concerning the land. *Dorsey v. St. Louis, A. & T. H. R. Co.,* 58 Ill. 65. A specific case in which it was held that the covenants did not run with the land is *Wiggins Ferry Co. v. Ohio & M. Ry. Co., supra.* The Wiggins Ferry Company conveyed to a railroad company rights and easements in two parcels of land, and the railroad company covenanted to employ the ferry company to transport across the Mississippi river persons and property brought to the river upon the railroad or to be transported on the railroad. The Ohio & Mississippi Railway Company thereafter purchased the railroad property and the suit was brought for a breach of the contract. The court held that the covenant did not concern the occupation or enjoyment of the two parcels of land in which the easement was granted and that the covenant was

personal and did not run with the land. In *Chicago Title & Trust Co. v. Corporation of Fine Arts Bldg.*, 288 Ill. 142, it was held that by the mere assignment of a lease by the lessee, the property of the assignee located in the building cannot be bound for instalments of rent under a provision in the lease for a lien upon the property of the lessee so located, and in the absence of a provision in the contract of assignment expressly pledging described property of the lessee for the payment of rent, no such lien exists. Also that a covenant in the lease providing that the lessor shall have a first lien upon the lessee's property now or thereafter located in said premises is not a covenant concerning the thing granted or the enjoyment of it, but is a collateral and personal covenant and does not run with the land. A case in which the contract was held to run with the land is *Griffin v. Bonnett*, 201 Ill. App. 387. George W. Funk leased to Robert Griffin 106 acres of land on which Griffin was to raise corn which the landlord was to take and for which he agreed to pay the tenant seventeen cents per bushel. Griffin was to furnish at his own expense a house and such other outbuildings as might be necessary for his use, and Griffin agreed on the termination of the lease to purchase such improvements. Griffin erected a house of the value of $790. Subsequently Bonnett, the defendant, purchased the premises from Funk, and as a part of the purchase price accepted the terms and conditions of the lease and agreed to buy the buildings. Upon the termination of the lease, Bonnett refused to pay for the improvements, and suit was brought and Griffin recovered. It was held that the improvements were necessary to the enjoyment of the land, that the defendant accepted the terms of the lease and he was held liable for such improvements. To the same effect is *Purvis v. Shuman*, 273 Ill. 286.

This building was erected by the father of appel-

lee, and he occupied it for thirteen years without any written agreement with the railroad company. In 1906 the written lease was executed. On that date the elevator was on the right of way and there was no change in its condition except that a written agreement was substituted for the prior oral agreement. All the provisions of this lease were binding upon the original parties thereto, but the execution of the lease was not necessary to the occupation or enjoyment of this real estate or the building located thereon. The lease made no particular change in the relation of the parties except that their oral agreement was put into writing and J. B. Atwood released the appellant from all liability for damage by fire. The covenant in the third paragraph releasing appellant from liability did not concern the occupation or enjoyment of land leased or the building located on the land but was merely a collateral provision to the lease. After the lease was executed, for three years J. B. Atwood operated the elevator, and in 1909 he conveyed it to his son. At that time the building was not conveyed by deed or by any written instrument, but was apparently considered as personal property. The appellee entered into possession of the building and for eleven years continued to operate the elevator. He undoubtedly knew that the elevator was on the right of way of appellant, but there is no evidence that he was ever informed as to the provisions of the lease which had been executed by his father. It is undisputed that he did not accept the lease. It was not assigned to him, and he testified he had no knowledge of its existence or provisions until after the fire. Under these facts and the authorities cited, we hold that clause three of the lease did not constitute a covenant running with the land; that it was not necessary either to the occupation or enjoyment of the estate leased, but was col-

lateral and personal, as was held in the *Wiggins Ferry* case and *Chicago Title & Trust Co.* case, *supra.*

If this covenant did not run with the land, then the mere fact that appellee became the owner of the elevator did not release appellant from liability for its negligent destruction. If the covenant did not run with the land then, in order for appellee to be bound by the terms of the lease, it was necessary that the lease be assigned to him in writing and that he specifically accept and become bound by its provisions. It is not contended that this was done. In *Chicago Attachment Co. v. Davis Sewing Mach. Co.*, 142 Ill. 171, it was held that the actual occupancy of leased premises and the payment of the rent to the lessor for part of the unexpired term by an assignee pursuant to a contract of assignment with the lessee which is not in writing is not sufficient to exempt such assignment from the operation of the statute of frauds where the assignee vacated before the term expired and is sued for subsequently accruing rent. Also, that where the lessee of an unexpired term made a verbal assignment thereof and put the assignee in possession, who paid the rent to the original lessor for about a year when he ceased to occupy the premises and refused to pay the rent thereon, and the lessor brought suit against him for the subsequently accrued rent, it was held that the statute of frauds was a bar to the action. In *Griffin v. Pfeffer Lumber Co.*, 285 Ill. 19, it was held that the mere occupation of premises by a tenant and the payment of rent stipulated in the original ten-year lease of the premises, which lease was never assigned to the tenant in writing or accepted by him, do not bind the tenant to perform a provision of the lease requiring insurance to be taken out in the name of the lessor; that where a provision in a lease that insurance on the buildings shall be taken out in the name of the lessor in consideration of which the lessor, in case the buildings are

destroyed by fire, would restore the buildings to the extent of the amount of the insurance received, is not a covenant running with the land and before it can be enforced against the tenant, who is not the original lessee, there must be an agreement in writing signed by him.

In this connection our attention has been called to *Large v. Wabash R. Co.*, 168 Ill. App. 310, and *Surface v. Chicago, M. & St. P. Ry. Co.*, 191 Ill. App. 261, where it is contended by the appellant that a contrary rule is announced. We have examined the leases in both of these cases and find that they contain provisions which are much broader than the third clause of the lease in question, and for that reason, if for no other, we hold that those two cases are not controlling.

It is next claimed by the appellant that the prima facie case of negligence established by the evidence offered by appellee was overcome by the evidence of appellant and for this reason the verdict is contrary to the evidence and the court should have directed a verdict for appellant.

The fire was discovered on the west side of the roof of the elevator, next to the railroad, about 4 o'clock p. m. One train had gone north about forty minutes before the fire was discovered and another one had gone north about eight minutes before the fire was discovered. The evidence on behalf of appellee was sufficient to make out a prima facie case as alleged in the declaration. The engineer of the passenger train, which was the last train north before the fire, testified that the train went past Roscoe Siding, which was a flag stop, about twenty or twenty-five miles an hour. As it approached the station, it was under control, so it could make a stop if necessary, and the engineer had shut the steam off about 300 feet south of the elevator. The engineer was on the right-hand side of the engine, next to the ele-

vator, and he testified there was no fire in the elevator or on the roof when he went past. He noticed the whole building. There were no sparks coming from the smokestack of the engine. He described how the front end of the engine was constructed with reference to the spark arrester. He testified that the sparks go through the flues, strike certain deflection plates twice, then come in contact with a door, then strike a screen and finally go out through the smokestack. When the sparks hit the plates they are broken up into fine pieces. He testified that the engine exhaust went through the exhaust pipe and threw the smoke out in the air, together with the exhaust steam. If the throttle was not open there would be no exhaust, and sparks could not be drawn through the stack. He testified that the throttle was not opened as he passed the elevator and had not been opened for 300 feet south of it; that the spark arrester was of the type in general use, was in good repair and was the type most approved for the prevention of sparks. The roundhouse foreman at Janesville, Wisconsin, testified he was familiar with this spark arrester, it was his duty to inspect it, and he did inspect it. He described the construction of the engine so far as the spark arresters were concerned and testified that before the sparks could get through the net they would become deadened almost instantly when they hit the outside air, that the arresters were of the best and most approved type and were in good repair. The man who made the inspection of this engine testified that on the day of the fire it was in good repair. This was substantially all of the evidence offered on behalf of the appellant to overcome the prima facie case made by the appellee.

Section 96, ch. 114, Smith's Statutes, p. 1573 [Cahill's Ill. St. ch. 114, ¶ 164], provides that in all actions against any incorporated company for the

recovery of damages on account of injury to property occasioned by fire communicated by any locomotive, the fact that such fire was so communicated shall be taken as prima facie evidence to charge the corporation operating said engine with negligence. It was only necessary, in the first instance, for the appellee to establish his prima facie case of negligence by introducing evidence showing, or tending to show, that the fire was caused by a spark from one of these locomotives. When such prima facie case was made, the burden of proof was then cast upon the appellant to show, either that the fire was caused by some other agency, or that its engines were equipped with the necessary and most effective appliances to prevent the escape of fire, were in good repair, and were properly, carefully and skilfully handled by competent engineers. *First Nat. Bank v. Lake Erie & W. R. Co.,* 174 Ill. 36; *Cleveland, C., C. & St. L. Ry. Co. v. Hornsby,* 202 Ill. 138. Where experts testify that the engine and spark arrester are of the best and most approved type and properly handled, it still remains a question of fact for the jury as to the weight of such evidence. *Illinois Cent. R. Co. v. Bailey,* 222 Ill. 480. We will not disturb the verdict of the jury unless it is clearly against the weight of the evidence. Considering the evidence as an entirety, it was sufficient for the jury to believe therefrom that the fire was in fact caused by the negligence of the appellant, as alleged in the declaration. We cannot say that this finding of the jury is contrary to the weight of the evidence and the judgment cannot be reversed on that ground.

Complaint is made of the seventh and eighth instructions given on behalf of the appellee. The seventh instruction told the jury what was necessary for the appellee to prove in order to make out a prima facie case of negligence. It was in accordance with the provisions of the statute and was not subject to

the objections made against it by appellant. The eighth instruction told the jury it was not necessary that any person testify to having actually seen sparks or fire communicated from the engine to the building; that if the facts and circumstances shown by the evidence were such that a reasonable person would conclude from those facts and circumstances that a spark was communicated from the engine to the building, then such circumstances, provided they constituted the preponderance of the evidence, were sufficient to show that fire was communicated to the building from the engine of the appellant. This instruction did not direct a verdict, but simply announces a rule of law which the jury had a right to consider in determining the issues in the case. It did not assume facts not proven, and it was not necessary that it should include the defense sought to be made by appellant.

We find no reversible error and the judgment is affirmed.

*Judgment affirmed.*