(No. 12184.—Appellate Court reversed; circuit court affirmed.)

THE CHICAGO TITLE AND TRUST COMPANY, Admr., Plaintiff in Error, *vs.* THE CORPORATION OF THE FINE ARTS BUILDING, Defendant in Error.

*Opinion filed April 15, 1919—Rehearing denied June 4, 1919.*

1. ADMINISTRATION—*administrator has no inherent authority to conduct retail store business.* The functions of an administrator or executor are to close up the estate for which he is acting, and he has no inherent authority, as such officer, to conduct a retail store business.

2. SAME—*claim for expenses of administration is not consistent with claim of lien for installments of rent arising out of lease to the deceased.* A claim of a lien for installments of rent, which is based on the terms of a lease assigned to the deceased, is not consistent with a claim for rent as an expense of administration, as the former arises out of the contract of the deceased and is a claim against the estate, while the latter arises wholly out of the action of the representative and is a claim against the representative.

3. SAME—*what are proper expenses of administration is question to be passed upon by probate court.* What are proper items of expenses of administration is a question to be passed upon by the probate court so that the estate and its creditors may have opportunity to appear and be heard, and it is error for the Appellate Court, on an appeal involving only the question of right to a lien for installments of rent, which is based upon the terms of a lease, to find that the amount claimed as rent should be classified and allowed as expenses of administration and given priority as such.

4. SAME—*contingent claims cannot be allowed under section 67 of Administration act.* The holder of a contingent claim is not a creditor of the estate of a deceased, and claims dependent on a contingency which may or may not ripen into a liability cannot be proved and allowed under section 67 of the Administration act, as that section refers only to claims on which there is an absolute liability, though the time of payment is postponed.

5. SAME—*what determines whether probate court shall allow claim not due.* The power of the probate court to allow a claim which is not due depends upon the filing of the claim within the year allowed for filing claims and also upon the absolute liability of the deceased, though the claim is not due during said year.

6. SAME—*when a claim for future installments of rent is contingent.* A claim for future installments of rent from the end of the year allowed for filing claims against the estate of the deceased

assignee to the·end of the term provided for in the lease is a contingent claim, where there are circumstances beyond the control of either party to the lease or specified contingencies which may prematurely terminate the lease; and such a lease is to be distinguished from a contract to purchase on installments, where the obligation is to pay at all events.

7. SAME—*suit for installments of rent not allowable as a claim may be brought against representative or heirs of deceased.* The fact that a claim for future installments of rent cannot be proved against an estate because the liability is contingent does not bar the claimant from ·bringing an action against the representative personally or against the heirs of the deceased for installments that actually accrue under the contract of the deceased during the occupation of the premises by the estate.

8. SAME—*failure to close up estate does not change law as to allowance of claims.* Failure to close up an estate and confusion in the administration on the part of the executrix do not change the law applicable to the allowance of claims payable out of the assets inventoried.

9. LIENS—*description in a chattel mortgage must be sufficiently specific to identify property.* The rule that the description of property mortgaged must be sufficiently specific to afford third persons the means of identifying the property refers to chattel mortgages as well as to mortgages of land.

10. SAME—*what description in lease is not sufficient to create lien for rent on after acquired property of lessee.* A provision in a lease that the lessor shall have a first lien for installments of rent upon the "lessee's property now or hereafter located in said premises" is too indefinite to create a lien upon property of the lessee subsequently acquired.

11. LEASES—*property of assignee of lessee cannot be pledged for rent by mere assignment of lease.* By the mere assignment of a lease by the lessee the property of the assignee located in the building cannot be bound for installments of rent under a provision in the lease for a lien upon property of the lessee so located, and in the absence of a provision in the contract of assignment expressly pledging properly described property of the assignee for the payment of rent no such lien exists.

12. SAME—*a covenant creating lien for rent does not run with land.* A covenant in a lease that the lessor shall have a first lien upon the "lessee's property now or hereafter located in said premises" is not a covenant concerning the thing granted or the enjoyment of it but is a collateral and personal covenant and does not run with the land.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. DAVID F. MATCHETT, Judge, presiding.

E. I. FRANKHAUSER, FREDERICK A. BANGS, and AR-THUR M. COX, (RICHARD H. COLBY, and JUDAH, WIL-LARD, WOLF & REICHMANN, of counsel,) for plaintiff in error.

TENNEY, HARDING & SHERMAN, and WILSON, MOORE & McILVAINE, (HORACE KENT TENNEY, of counsel,) for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

This is *certiorari* to the Appellate Court for the First District to review a judgment of that court reversing a decree of the circuit court of Cook county, heard on appeal from an order of the probate court of that county allowing a certain claim against the estate of Winfield Scott Thurber, deceased, and a decree, also entered by that court, declaring said claim and other claims to be liens on the property of said estate by virtue of a certain lease in which deceased was lessee.

The defendant in error leased a six-story building, described as 208 Michigan boulevard, in the city of Chicago, to the Bissell-Cowen Piano Company for a term of ten years from April 30, 1909, for a rental of $2166.67 per month. One of the provisions of the lease is as follows: "The lessor shall have a first lien upon the interest of lessee under this lease and upon lessee's property now or hereafter located in said premises, to secure the payment of all moneys due under this lease." This lease was assigned by the Bissell-Cowen Piano Company, with the consent of the defendant in error, to the Æolian Company. On January-ary 27, 1913, the Æolian Company assigned the lease to

Thurber.   All these assignments were made with the written consent of the lessor, defendant in error herein.   Each assignment carried with it the continuing liability of the assignor and contained the stipulation that the assignee would not assign the lease.   Thurber sub-let to other parties all of the building except the first and sixth floors, which he occupied up to the time of his death.   Thurber died September 24, 1913, leaving a last will and testament, which was duly proven and admitted to probate, in which Martha C. Thurber, his wife, was named sole legatee and executrix.   Letters were issued to Martha C. Thurber, who continued to act as executrix of the last will and testament of W. Scott Thurber until the plaintiff in error, the Chicago Title and Trust Company, was appointed administrator *de bonis non,* etc.   Two days after letters testamentary were issued to Martha C. Thurber, on petition of the executrix, an order was entered authorizing her to continue the business for a period of sixty days, provided that all profits revert to the estate and all losses be paid by the executrix individually, and that such time should not exceed sixty days.   Within that time an order was entered in the probate court, upon petition filed by the executrix, to sell at public or private sale that part of the personal property consisting of the stock of merchandise,—*i. e.,* oil paintings, etchings, water colors, picture frame moldings, glass, etc., theretofore appraised at $61,910.50, at not less than the appraised value.   The executrix continued in possession of the property, executed sub-leases to tenants and collected rent from them, and to enforce the collection of the rent brought suit in her name as executrix.   In her report to the probate court, filed July 2, 1915, she claims credit for payment of rents so made and charges herself with collection of rent from sub-tenants.

The rent under the lease for the month of September, 1913, was due and unpaid at the time of Thurber's death, and a claim was filed and allowed by the probate court as

288 — 10

a seventh-class claim for the amount of $2166.67. On September 26, 1914, defendant in error filed a claim for rent for the months of July, August and September of that year, which was allowed December 15, 1914, by the court in the amount of $6225.01 as of class 7, without prejudice to the claim of the defendant in error to the preferred and prior claim upon the assets of said estate. No appeal was perfected from these two claims so allowed. In addition to this, a claim was filed on September 26, 1914, three days before the close of the year for administration, for rent not due but to accrue for the premises for the period from October 1, 1914, to April 30, 1919, at the rate of $2166.67 a month, $119,166.67. On June 24, 1915, this claim was allowed as of class 7 for the amount of $8042.77, being the rent due for the premises in question from October 1, 1914, to March 31, 1915, on which last date defendant in error had sold the building in question.

On December 24, 1914, the defendant in error filed its petition praying that the claims for rent theretofore allowed ($8391.68) be decreed to be first and prior liens upon the personal property of the deceased located within Cook county at the time of his death by virtue of the terms of the lease; that the same be paid before other claims, including the widow's award; that the claim for rent for the months of October, November and December, 1914, amounting to $6550.01, be paid as costs and expenses of administration and made a first and prior charge against all the assets of the deceased; that the rent accruing thereafter as long as the executrix occupied or controlled the building, and the rent accruing in the future, be allowed as part of the costs and expenses of administration; that the executrix pay to the petitioner all rents in her possession collected from sub-tenants. On June 24, 1915, the date of the allowance of the claim above mentioned for $8042.77, the probate court heard this petition and decreed that all the claims allowed, amounting to $16,434.45, be

given priority under the lien contained in the lease. The decree also included the claim on that day allowed for $8042.77, though it does not appear to have been included in the petition. The court ignored that part of the petition asking that rent after October 1, 1914, be allowed as expenses of administration. The decree specifically found that such lien arose from the lease. There is nothing in the decree finding that said claims were entitled to priority as expenses of administration, nor is there anything in the petition for lien from which it could be inferred that the petition was seeking to have the previously allowed claims re-classified as expenses of administration. No petition for a re-classification of these claims from the seventh class, in which they were allowed, appears anywhere in the record. It is evident that the probate court made no attempt to pass upon the question of what constitute proper allowances of rent as expenses of administration in the case. Its decree is based solely on the ground that the claimant is entitled to such lien under its lease. While pleadings in such a case are limited, yet it is evident from the record that no attempt was made to have these claims re-classified.

The estate perfected two appeals to the circuit court: One from the order of June 24, 1915, allowing as of the seventh class the sum of $8042.77 as rent after the year for administration had passed; and the other from the decree granting priority to the three claims, amounting to $16,434.45.

It was admitted by the plaintiff in error in the circuit court, and likewise here, that the first claim for rent for the month of September, 1913, due and unpaid at the time of the death of Thurber was properly allowed as a claim of the seventh class by the probate court, and that the claim as allowed by the court in the sum of $6225.01 as a claim of the seventh class was properly allowed, and that these two claims should stand as found. No appeal was perfected from either of these claims. Plaintiff in error con-

tended in the circuit court, as it does here, that the claim allowed by the court to the amount of $8042.77 was, at the time the claim was filed, for rent not due until after the expiration of the period for filing claims and is contingent and should not have been allowed, and that the defendant in error is not entitled to a lien on the assets of the estate under the lease.

The circuit court held that the claim upon which an allowance of $8042.77 was made was a contingent claim when filed, and that although it was filed before the close of the period for filing claims it was not an absolute debt provable against the estate of the deceased, and denied said claim. That court also held that the terms of the lease were not sufficient to give to the landlord a lien on the property of the estate sought to be made subject thereto. The circuit court made no attempt to pass upon the priority of the claims as expenses of administration, expressly holding that such matter was not in the record and was not passed upon.

The claimant appealed to the Appellate Court for the First District, and that court held that it was not necessary to pass upon the holding of the circuit court that the claim for rent after the period for filing claims was a contingent claim, and also held that it was not necessary to pass upon the holding of that court that the lease was not sufficient to grant a lien, for the reason that (as it held) $16,434.45, the total of the three claims allowed, were proper charges against the estate as expenses of administration and allowable as such. The Appellate Court reversed the decree of the circuit court and remanded the cause, with directions to that court to enter judgment for the sum of $16,412.77 as expenses of administration. It appears from the record that neither the probate nor circuit court had that issue before it. The original petition was for a lien under the lease and not for a re-classification. Neither the estate nor its creditors have had an opportunity to appear and be heard on what constitutes a proper allowance as expenses of ad-

ministration. The questions involved and urged in the appeal to the Appellate Court were the effect of the lease as to its constituting a lien and that of the allowance of rent under the lease after the period for filing claims had passed. The Appellate Court, however, arrived at the conclusion, from the record, that the full amount of the three claims was properly costs of administration. We have examined the record with a view to determining whether this conclusion can be sustained on the record and are of the opinion that it cannot.

The functions of an administrator or executor are to close up the estate for which he is acting. He has no authority, as such officer, to conduct a retail store business. Such is beyond the scope or functions of his office. (*Grace* v. *Seibert,* 235 Ill. 190; *Smith* v. *Preston,* 170 id. 179.) The record does not disclose any authority from the probate court to conduct the business of the deceased further than is found in an order entered October 1, 1913, which authorized the executrix to conduct the business for a period not to exceed sixty days. It is urged that this authorization was extended indefinitely by a subsequent order of November 13, 1913. That order directed that the executrix "proceed to sell that part of the personal property consisting of the stock of merchandise," etc., "at public or private sale, as provided by law, for not less than the appraised value," etc. We are unable to agree with the contention of counsel for defendant in error that this was an extension of authority to conduct business. On the contrary, that order, in effect, directs the closing out of this stock. It is an order to sell, with no authorization to buy to replenish the stock as contemplated in conducting a retail business. It follows that the order of November 13, 1913, did not extend the authority of the executrix beyond the period of sixty days.

It is unnecessary to pass upon the question as to whether the probate court had authority to authorize an extension

of time for the conduct of the business by the executrix, as the record discloses no such extension. Nor is there in the record any further evidence of such authority. There appears to have been no report of account filed by the executrix prior to July 2, 1915.

What, under all the circumstances of this case, would constitute a proper allowance as expenses of administration is not before this court. There has been no hearing on that matter. No evidence has been offered upon that subject in the probate or circuit court, other than that of the occupancy of the premises by the executrix, which would enter into the determination of that question. The petition of defendant in error in the probate and circuit courts asked that a lien be declared for the sum of $8391.68 arising out of the contract of lease of the deceased. While the petition prayed that installments of rent accruing after October 1, 1914, be declared expenses of administration of the estate, yet the probate court made no disposition of that question, and the defendant in error, as such petitioner, appears to have taken no appeal from the decree of the probate court but followed the appeal of the executrix in the circuit court and there defended the decree giving priority, under the lease, to this item for rentals. The decree was based solely on the ground that a lien was given by the lease. It is evident that this was the theory upon which the case was tried in the probate and circuit courts, and that the other creditors of the estate have not had their day in court or a hearing on what would be proper expenses of administration.

There is a broad distinction between a lien for installments of rent which arises out of a lease, and the classification of a claim as expenses of administration. The former arises out of the contract of the deceased, while the latter arises wholly out of the action of the representative. The former is a claim against the estate of the deceased, while the latter is a claim against the representative. (*Smith &*

*Co. v. Williams,* 178 Ill. 420; Schouler on Wills, Executors and Administrators,—5th ed.—par. 1256.) Such claims are inconsistent. 18 Cyc. 880; *Meyer v. Cole,* 12 Johns. 349.

We are of the opinion that the record does not afford any basis for the holding of the Appellate Court, and without passing upon what would in the present case constitute proper items of expenses of administration, as that matter must be passed upon by the probate court, we are of the opinion that the Appellate Court erred in finding, from this record, that said amount should be classified and allowed as expenses of administration and given priority as such.

The defendant in error contended in the Appellate Court that the circuit court erred in holding that the lease did not create a lien on the property of the deceased in the premises in question at the time of his death. Section 12 of the lease provides as follows: "That lessor shall have a first lien upon the interest of lessee under this lease and upon lessee's property now or hereafter located in said premises, to secure the payment of all moneys due under this lease." It is contended by the defendant in error that the language, "lessee's property now or hereafter located in said premises," is a description of the property of the estate sufficient to create a lien against such property. Regarding such a lien this court said in *Borden v. Croak,* 131 Ill. 68: "The lien claimed is one where the property is left in the possession of the debtor, and it is therefore in the nature of a mortgage rather than a pledge and is to be governed by the rules of law applicable to chattel mortgages." Also: "The question, then, is whether a contract for the sale or mortgaging of subsequently acquired chattels will be specifically enforced in equity where no chattels are specifically described, the only description being that contained in the general word 'property.' It is undoubtedly the rule that the equitable title to goods, as well as to land, is confined to specific property and does not extend to goods which are undetermined. As said by the Lord Chancellor

in *Holroyd* v. *Marshall,* 10 H. L. Cas. 191: 'A contract
for the sale of goods, as, for example, of 500 chests of tea,
is not a contract which would be specifically performed be-
cause it does not relate to any chests of tea in particular;
but a contract to sell 500 chests of the particular kind of
tea which is now in my warehouse is a contract relating
to specific property and which would be specifically per-
formed.' In *Tadman* v. *D'Epineuil,* 20 L. R. Ch. Div. 758,
a party by a written instrument charged 'all his present and
future personalty' to secure future indebtedness to plain-
tiff and afterwards became indebted to him, and upon the
principles laid down in *Holroyd* v. *Marshall* it was held that
the instrument operated to charge all the personal property
belonging to the debtor at the date of the instrument but
did not operate to charge subsequently acquired property.
In *Belding* v. *Reed,* 3 Hurl. & Colt. 955, a debtor assigned
to his creditor, by bill of sale, all his household furniture,
plate, linen, etc., and all his other personal estate and effects
whatsoever, then being or thereafter to be upon or about
his dwelling house, farm or premises, or elsewhere in Great
Britain, upon trust to sell and satisfy his debt. Power was
given the creditor to enter the premises where the goods
assigned might be and take possession thereof, but it was
provided that until he should see fit to do so the debtor
might retain possession. After five years, the debtor hav-
ing in the meantime become a bankrupt, the creditor, after
having demanded payment, entered, and, with other goods
of the debtor, seized goods which the debtor had acquired
subsequent to the execution of the bill of sale. In an ac-
tion of trover by the assignee in bankruptcy it was held
that as the goods were not identified by the bill of sale the
creditor took no title to them and that the action might
be maintained."

The rule that the description must be sufficiently specific
to afford third persons the means of identifying the prop-
erty refers to chattel mortgages as well as to mortgages of

land.  (*First Nat. Bank of Joliet* v. *Adam,* 138 Ill. 483.)
The language, "lessee's property now or hereafter located
in said premises," does not in any way describe or specify
the nature or character of the property nor in any way at-
tempt to determine what the after-acquired property shall
be and is therefore too indefinite to create a lien on after-
acquired property.  (*Borden* v. *Croak, supra; First Nat.
Bank of Joliet* v. *Adam, supra.*)  Even though this language
were sufficiently definite to create a lien on after-acquired
property of the lessee, it might well be doubted whether it
should be held to cover the property of the assignee of such
lease, in the absence of a specific undertaking of the as-
signee that it should do so.  By the terms of the assignment
Thurber agreed to assume the lease and agreed "to make
all payments yet to be made and to perform and abide by
all the obligations of the lessee under this lease."  There
appear to be no decisions in this State directly in point on
this question.  It is said in Tiffany on Landlord and Ten-
ant (vol. 2, p. 1969) : "There has apparently been no de-
cision upon the question whether the goods of an assignee
of a leasehold, or of a sub-tenant, brought by him upon the
premises can be subjected to a lien created by the lessee, but
it would seem that they cannot be so subjected, since the
lessee has no right to create a lien upon property in which
he has no interest, and the provision for a lien cannot be
regarded as a covenant which will run with the land since
it concerns chattels and not land, and there is, moreover,
some difficulty in construing a provision for a lien intended
to create a 'real' obligation, as creating a personal obliga-
tion by way of a covenant.  *  *  *  To create a lien on
chattels thereafter brought onto the premises, however, they
must, it has been decided, be specifically referred to, and a
provision for a lien on lessee's property is consequently in-
sufficient for this purpose."

It is evident that a lessee has no authority to bind the
goods and chattels of his assignee under a lease as he has

no interest in the goods pledged by such a contract, and the transaction lacks the first essential of a valid pledge,—that the pledgor have title to the property pledged. Nor would an undertaking on the part of an assignee to pay rent and to keep all covenants to have been kept by his assignor have the effect of bringing his property under such a lien. An agreement of an assignee to keep such a covenant of the original lessee is an agreement to keep a covenant which the original lessee had no power to keep. A contract for lien on the property of an assignee of a lease is a contract which the original lessee did not make and could not have made. It is separate and collateral to the contract for the payment of rent. It follows, therefore, that in the absence of a provision in a contract of assignment expressly pledging the property of the assignee for the payment of rent no such lien exists against the after-acquired property of the assignee of a lease.

But it is contended this is a covenant to pay rent and therefore a covenant that runs with the land. We do not think so. This court held in *Purvis* v. *Shuman,* 273 Ill. 286: "The test whether a covenant runs with the land or is merely personal is whether the covenant concerns the thing granted and the occupation or enjoyment of it, or is a collateral and personal covenant not immediately concerning the thing granted. If a covenant concerns the land and the enjoyment of it, its benefit or obligation passes with the ownership; but to have that effect the covenant must respect the thing granted or demised and the act to be done or permitted must concern the land or estate conveyed. An illustration of the rule is found in *Wiggins Ferry Co.* v. *Ohio and Mississippi Railway Co.* 94 Ill. 83. * * * The court said that in order that a covenant may run with the land its performance or non-performance must affect the nature, quality or value of the property demised, independent of collateral circumstances, or must affect the mode of enjoyment." The covenant in question was not a covenant

concerning the thing granted or the enjoyment of it but was a collateral and personal covenant, and as such it does not run with the land.  *Purvis* v. *Shuman, supra;* 24 Cyc. 918; *Farrington* v. *Kimball,* 126 Mass. 313.

It follows from the foregoing that the provisions of the lease were not sufficient to create a lien on the property of the deceased, and the circuit court did not err in so holding.

The remaining question in the case is whether the claim of $8042.77 allowed for rent after the period of administration was passed was a valid charge against the estate or was a contingent claim and not so provable.

On September 26, 1914, defendant in error filed in the probate court a claim for rent, as follows: "To rent not due but to accrue for the premises 202 Michigan boulevard, Chicago, Ill., for the period October 1, 1914, to April 30, 1919, at the rate of $2166.67 a month, $119,166.67." While this claim was filed three days before the expiration of the year fixed by the statute for the filing of claims, the claim is for rent not due until after the year for filing claims was passed. There appears to have been no hearing on this claim until June 24, 1915, when, as we have seen, $8042.77 was allowed as a balance due to March 31, 1915, as a seventh-class claim, and on the same day decreed to be a lien on the property of the estate on the premises by virtue of the lease. It is contended by plaintiff in error that rent not due at the death of the testator and unearned during the period for filing claims was a contingent claim and should not have been allowed. The defendant in error contends that as the executrix continued in occupation after the year for filing claims, this entitled the landlord to have this claim allowed for the period of occupation, and that, in any event, it was not a contingent claim.

It is well settled in this State that claims dependent on a contingency which may or may not ripen into a liability cannot be proved and allowed under section 67 of the Administration act.  Said section refers only to claims on

which there is an absolute liability although the time of payment is postponed, and has no reference to contingent claims. The holder of a contingent claim is not a creditor of the estate. If his claim remains contingent during the whole of the year allowed for the exhibition of the claims against the estate he cannot participate in the distribution by the administrator. (*Union Trust Co.* v. *Shoemaker,* 258 Ill. 564; *Pearson* v. *McBean,* 231 id. 536; *Mackin* v. *Haven,* 187 id. 480; *Snydacker* v. *Swan Land and Cattle Co.* 154 id. 220; *Dugger* v. *Oglesby,* 99 id. 405; *Stone* v. *Clarke's Admrs.* 40 id. 411.) If this claim for rent was a contingent claim and remained such during the year allowed for the exhibition of claims, then the holder of that claim was not during such year a creditor of the estate and such claim cannot be allowed against the estate under said section 67, to be paid, on distribution by the executor or administrator *de bonis non,* from the estate inventoried. By section 70 of the Administration act claims which are not exhibited or filed during the first year allowed for administration are barred from sharing in the estate inventoried. While this claim was exhibited during the year following the issuance of letters testamentary, this fact will avail nothing if the claim was, in fact, a contingent one. Nor will the fact that it was allowed at a much later date aid the claimant, for the reason that the power of the probate court to allow the claim at all must be based on two premises: First, the filing of the claim within the year; and second, the absolute liability of the deceased though the claim is not due during said year.

Is this claim for the rentals covering the balance of the term a contingent claim? We are of the opinion that it is. There are different contingencies in a lease of this character, the happening of which is not within the control of either party to it, which may defeat all right to recover rents, as where the building shall be so injured by fire as to be untenantable, then, unless it be repaired in thirty days,

the lessee as well as the lessor may terminate the lease; also it is provided in the lease that in case the lessor desires to re-build the building he may terminate the lease. This cannot be said, therefore, to present such an absolute liability as that contemplated in section 67 of the Administration act, and, indeed, such a rule would be most far-reaching in its consequences, for if A leases a building for a term of years to B and B dies, and A be allowed to have out of the assets of the estate inventoried by its representative the total rentals less the discount provided for by the statute, a solvent estate might be rendered insolvent to the exclusion of all other creditors. Such a result could not have been contemplated by the legislature in the enacting of section 67. This is to be distinguished from a contract to purchase land on installments, for in the latter case the obligation is to pay at all events. The fact that such a claim cannot be proved against an estate does not bar the claimant from bringing an action against the representative, personally, or the heirs of the deceased, for installments that actually accrue under the contract of the deceased. As was said in *Snydacker* v. *Swan Land and Cattle Co. supra,* concerning claims arising on contract of the testator which did not accrue till after the estate was closed, quoting with approval *Hall* v. *Marten,* 46 N. H. 337: "The general principle laid down is this: that the heir is liable, to the extent both of the personal and real estate received from his ancestor, for the contracts or liabilities of the ancestor, and that where these claims have not accrued until after the administration of the estate is closed, suit may be brought and maintained against the heir to the extent of such assets which he derived from the ancestor."

While it appears from the record here that the estate was not closed when this claim was filed, it further appearing that the executrix's report of account has not yet been approved nor the estate closed, yet so far as the right to have this claim allowed and paid out of the assets inven-

toried is concerned the situations are analogous. Nor does the fact of confusion and failure to close up the estate on the part of the executrix change the law applicable to the allowance of claims payable out of the assets inventoried.

As the claim for $119,166.67 for unaccrued rentals is a contingent claim, there is no authority, under the statute, for its allowance. The allowance of any part of such a claim was an allowance under the terms of the lease. That such allowance was so made is evidenced by the fact that the probate court allowed the sum of $8042.77 as a seventh-class claim. Any allowance of this claim as a liability under the lease must have been made by authority of section 67. The allowance of any portion of this claim under said section was, as we have seen, erroneous. We are of the opinion that the circuit court did not err in holding said item of $8042.77 to be a claim which cannot be allowed to participate in the distribution of the assets inventoried.

As we understand the record, the claim of $2166.67 for rent for the month of September, 1913, and the claim of $6225.01 balance for the year of administration, having been allowed as seventh-class claims and no objection thereto being made by the estate, by the records of the probate and circuit courts stand allowed as seventh-class claims. The question what should be allowed as expenses of administration may properly be brought before the probate court for determination.

For the foregoing reasons the judgment of the Appellate Court will be reversed and the decree of the circuit court will be affirmed.

*Judgment of Appellate Court reversed.*
*Decree of circuit court affirmed.*