## Emma F. Allen, Appellee, v. Estate of Henry P. Allen, Deceased, Appellant.

### Gen. No. 6,743.

1. BILLS AND NOTES, § 375*—*what is prima facie evidence of consideration.* The statement in a negotiable promissory note or other contract in writing that it is for value received is prima facie proof of consideration.

2. CONFLICT OF LAWS, § 12*—*what law governs instrument for payment of money.* A written instrument for the payment of money is to be construed according to the law of the place where it was made.

3. COMMON LAW, § 7*—*what presumed as to another State.* In the absence of proof to the contrary, it is presumed that the common law obtains in another State.

4. CONTRACTS, § 224*—*how instrument providing for payment on, sale of certain property construed where death intervenes before sale.* A daughter's right to recover against her father's estate on an instrument, signed by the father and his wife, which reads: "I promise to pay Emma F. Allen [the daughter] for value received, three thousand dollars ($3,000) without interest. To be paid when the farm is sold," is not defeated by the fact that the father died without selling the farm, but the contract implies that the farm was to be sold in a reasonable time and that it shall be due and payable after such time has elapsed.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

5. CONTRACTS, § 215*—*what deemed basis of promise by father to pay daughter*. It is a reasonable conclusion that a written promise by a father to pay his daughter for value received a certain amount when his farm should be sold was given to compensate the daughter for her services in caring for her mother, who was an invalid for many years, requiring much attention, and for doing the housework necessary for her father and the hired men living in the house.

6. CONTRACTS, § 300*—*what is reasonable time for performance*. Where a written promise by a father to pay his daughter a certain amount when his farm is sold, which is also signed by the mother, is dated May 10, 1908, and the father died in 1915 and the mother in 1917, it is properly *held* that a reasonable time for the sale of the farm had elapsed.

7. INTEREST, § 59*—*time from which allowed*. On a written promise to a daughter, signed by her father and mother, to pay such daughter a certain sum when the father's farm is sold but which farm was not sold before his death, such daughter may properly be allowed interest from the date of the mother's death, which occurred about 9 years after the date of the promise.

8. EXECUTORS AND ADMINISTRATORS, § 292*—*when allowance of claim for services does not preclude recovery on separate promise*. The fact that a daughter was allowed a claim against her father's estate for services rendered in nursing her mother after the date of a written promise by the father to pay her a certain sum "for value received" does not affect her right to recover against the estate on such promise.

Appeal from the Circuit Court of Whiteside county; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court at the October term, 1919. Affirmed. Opinion filed March 9, 1920.

FRANK J. BOWMAN and HENRY C. WARD, for appellant.

DOERFLER, BENDER & McINTYRE and McCALMONT and RAMSAY, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Emma F. Allen filed a claim in the county court of Whiteside county against the estate of her father,

*See **Illinois Notes Digest**, Vols. XI to XV, and **Cumulative Quarterly**, same topic and section number.

Henry P. Allen, deceased, upon an instrument in writing for the payment of money, which was attached to the claim. It was allowed in the county court and again in the circuit court, where it was tried without a jury upon an appeal prosecuted by the administrator. The administrator now appeals to this court.

The instrument was dated at Madison, Wisconsin, on March 10, 1908, and was signed by Allen and his wife, and the body reads as follows: "I promise to pay Emma F. Allen for value received, three thousand dollars ($3,000) without interest. To be paid when the farm is sold." Allen owned a farm in Whiteside county, Illinois, and he owned no other farm, and that was the farm referred to. He died without selling it, though his heirs at law have since contracted to sell a part of it. The estate contends that the instrument is not a negotiable promissory note and that the payee cannot recover upon it without proving that Allen sold the farm, and as he did not sell it, no recovery can be had. The instrument says it is for value received. If it is a negotiable promissory note, that is prima facie proof of consideration. *Hoyt v. Jaffray*, 29 Ill. 104; Randolph on Commercial Paper, secs. 178, 563, 1663. If it is not a negotiable promissory note, still the words "for value received" are prima facie proof of a consideration. In 1 Moore's Civil Treatise (4th Ed.), sec. 83, it is said: "The admission in a contract in writing that it is made for value received or for a valuable consideration is prima facie evidence of a sufficient consideration for such contract." The fourth headnote to *Meyers v. Phillips*, 72 Ill. 460, is as follows: "Where a promise to pay money is averred in the declaration to have been made for value received, it will be sufficient proof of a consideration to show a written promise to pay for value received." Therefore, whatever view may be taken of the instrument sued on, it contains prima facie proof of a valuable consideration. No evidence was offered to show a lack

or failure of consideration. This instrument, therefore, is conclusively shown to have been made for an adequate consideration. The supposed condition as to time of payment, "when the farm is sold," could not be performed by the payee, but only by Henry P. Allen. The language is not "If the farm is sold," which might be held to imply an uncertainty in the minds of the parties whether the farm ever would be sold, but it is "when the farm is sold," which may fairly be held to imply that it was intended by the parties that the farm should be sold.

Similar language in like instruments has frequently been discussed in other jurisdictions. In *Nunez v. Dautel,* 19 Wall. (U. S.) 560, an instrument for the payment of money had this provision as to the time of payment: "This we will pay as soon as the crop can be sold or the money raised from any other source." The court said:

"No time having been specified within which the crop should be sold or the money raised otherwise, the law annexed as an incident that one or the other should be done within a reasonable time, and that the sum admitted to be due should be paid accordingly. Payment was not conditional to the extent of depending wholly and finally upon the alternatives mentioned. The stipulations secured to the defendants a reasonable amount of time within which to procure in one mode or the other the means necessary to meet the liability. Upon the occurrence of either of the events named or the lapse of such time, the debt became due. It could not have been the intention of the parties that if the crop were destroyed, or from any other cause could never be sold, and the defendants could not procure the money from any other source, the debt should never be paid. Such a result would be a mockery of justice."

In *Sears v. Wright,* 24 Me. 278, the instrument was in terms a promissory note except that as to time and source of payment it said: "From the avails of the

logs bought of Martin Mower when there is a sale made." The court said: "His agreement in terms was to wait until the logs could be sold. Thus the defendants had a duty to perform. They were bound to sell the logs and to do it within a reasonable time. A reasonable time for such purpose had long since elapsed." *Redman v. Adams,* 51 Me. 429, was a suit by an indorsee upon an accepted order for the payment of money which also contained the following: "And charge the same against whatever amount may be due me for my share of fish caught on board schooner 'Morning Star' for the fishing season of 1860." It was contended that the order was not negotiable and that the indorsee could not maintain the action. The court held that it was negotiable; that a means of reimbursement is indicated to the drawees, "but the payment of the order is not made to depend upon his having any share of fish." *Crooker v. Holmes,* 65 Me. 195, was litigation over an instrument which was an ordinary promissory note except that as to time of payment it said: "Payable when I sell my place where I now live in Oxford, Maine." Of this provision the court said: "The maker of the note is to make sale within a reasonable time to enable him to discharge his indebtedness." *Page v. Cook,* 164 Mass. 116, 28 L. R. A. 759, was upon an instrument which the opinion calls a promissory note, which as to time of payment said: "Payable when payor and payee mutually agree." The court held that that it could not have been the intention of the parties to enable defendant to escape payment by refusing to agree with plaintiff when it should be paid, and that it was more reasonable to construe it as meaning that it was payable when and after the payor ought reasonably to have agreed. The court further said:

"The promise to pay is absolute. It is only the time of payment which is left to further agreement. Evidently, it is expected, from the tenor of the note, that

the parties will agree, and that a time will be fixed, and that the note will be paid. But no time is fixed within which the agreement is to be made. The law will therefore imply a reasonable time. Besides, it is the payment, not the nonpayment of the note, for which the parties are providing. If the payor does not, within a reasonable time, agree when the note shall be paid, there is nothing unjust, nor at variance with the real meaning of the contract, in holding that the payee may thereupon demand payment, and, if the note is not paid, proceed to collect it."

*Ubsdell v. Cunningham*, 22 Mo. 124, was an action upon two instruments in the form of promissory notes, except that one of them said the money was to be paid "as soon as collected at Pokeepsie, now in the hands of Horace B. Potter of that place," and the other "to be paid as soon as collected from my accounts at Pokeepsie." There was evidence that some of the accounts had been collected before suit was brought, that unsuccessful efforts had been made to collect the rest, but that the accounts were now collectible. It was contended by defendant that the obligation to pay was conditional and the condition had not happened. The court said that both notes contained direct acknowledgment of indebtedness. "And we think the subsequent words 'to be paid,' etc., were not intended to show that the debts were conditional, depending for their existence as valid demands against the makers, upon the fact that the sums to be paid could be collected out of the accounts referred to, but only to prescribe the time of payment, by reference, not to days and years, but to a reasonable time for the collection of the accounts. This construction is warranted by the language used, and we have no doubt will execute the real intention of the parties." In *Randall v. Johnson*, 59 Miss. 317, the writing sued on, for the payment of a sum certain with interest, fixed the time of payment as "ninety days after the first return trip of the schooner 'Mary Bloom.'" The

schooner was lost at sea on her first trip and did not return. The court held that the true interpretation of the contract was that the contract assumed that the schooner would certainly return within a few months in regular course, and that as the schooner was lost at sea and could never return, the money promised became payable 90 days after the expiration of the period of time usually required for a return trip of the schooner. "It would be 'a mockery of justice' to hold that, because the schooner was lost at sea, and therefore had not made her first return trip, the appellee lost his debt." *Hicks v. Shouse,* 17 B. Mon. (Ky.) 483, was a suit on an instrument for the payment of money, and the payment was to be "as soon as I sell a house and lot in the City of Lexington, bought of C. J. Sanders and wife." The house and lot had not been sold. Defendant contended that he was not required to pay until the house and lot were sold. The court held it was a reasonable construction that the house and lot were to be sold within a reasonable time or the money paid without a sale, and that defendant's argument led to an absurdity and would do violence to all reasonable calculation as to the intention of the parties, and that a reasonable time had elapsed for the sale. *Williston v. Perkins,* 51 Cal. 554, was a suit on an instrument for the payment of money "when the three-masted schooner now in course of construction by said association is sold." The court held that defendants were entitled only to a reasonable time in which to finish and sell the schooner, and that time having elapsed, plaintiff could maintain the action. *Jones v. Eisler,* 3 Kan. 128, was a suit on an instrument for the payment of money "when I receive it from government for losses sustained in August, 1856, or as soon as otherwise convenient." The court said: "The first question presented by the record is, when did the note sued on become due? The note is not a conditional one. The maker owed the payee, who had performed labor for

him. He declares in the paper that he has received the consideration, which all must admit was a valuable one. The existence of the debt was not made to depend upon a condition or contingency. Everything necessary to constitute a promissory note, except the time of payment, is clearly expressed. As to the time the language is peculiar. It could not have been contemplated that if Jones never got his money from the government, or never should be in a situation when he could conveniently pay, that the money never was to be payable. Jones evidenly expected, within a reasonable time, to get money from the government, or, failing in that, within a like time it would otherwise be convenient to pay. After having performed work to the full amount of the note, it could not have been intended that Andres should never get his money unless Jones got his from the government, or should find it otherwise convenient to pay. The intention of the parties, doubtless, was that it should in any event be payable in a reasonable time, and such is the legal effect of the instrument.''

In *Benton v. Benton,* 78 Kan. 366, 97 Pac. 378, the instrument sued on was an agreement to pay money ''as soon as I can.'' It was construed to be payable within a reasonable time and that plaintiff's pleading was not required to allege that defendant had the financial ability to pay. In *Smithers v. Junker,* 41 Fed. 101, 7 L. R. A. 264, the suit was on an instrument for the payment of money ''payable at my convenience, and upon this express condition, that I am to be sole judge of such convenience and time of payment.'' It was averred that after a reasonable time had elapsed payment was demanded and refused. It was held that the instrument imported an obligation to pay a specific sum of money and that the language above quoted should not be construed to destroy that obligation, and that when payment was demanded after the lapse of 5 years the debt became due, and that such contracts

should be construed liberally in favor of payees. From these and other cases cited and stated in 7 Cyc. 857, 858; 8 C. J. 412, 413; and 13 C. J. 684, 685, and in the notes on those pages; and in 3 R. C. L. 906, 907, and in 6 R. C. L. 896 to 898, the conclusion is drawn by the authors of those articles that such instruments are due and payable after the lapse of a reasonable time for the performance of that which is made an apparent condition, but which is not to be performed by payee, where the words indicate a convenient time for payment.

Appellant contends that the foregoing principles are not the law of this State, and relies upon *Chicago Trust & Savings Bank v. Chicago Title & Trust Co.*, 190 Ill. 404. That case differs in many respects from the one now under consideration. The conditions written into that instrument for the payment of money were to be performed by the payee, and had not been performed. That instrument referred to another writing between the parties and the two were held to be parts of the same transaction, and construed together they were an ordinary contract for the performance of certain services and an agreement to pay therefor a certain sum. This was held not to be a negotiable instrument. The payee had merely indorsed it without recourse, which did not amount to an assignment of such a contract, and it was the indorsee who was seeking to enforce it. We conclude it has no bearing on this case. Our attention is not drawn to any Illinois case deciding this precise question, but a similar question has been passed upon in this State in harmony, as we think, with the authorities above cited. In *Horner v. Starkey*, 27 Ill. 13, the question was whether there had been a new promise to pay certain notes, sufficient to take the case out of the statute of limitations. The maker had said that if the payee would wait a while, he would pay the notes; that he was not then in a condition to pay them, but that "when he

made a raise," he would do so. It was argued that this was a conditional promise, to be performed upon the happening of an event which was not shown to have transpired. The court held that "he meant to convey the idea that he would certainly pay the debt, but wanted further time to do so. The idea he designed to convey was that he would make exertions and as soon as possible would pay the debt." When that case was again before the Supreme Court in *Sennott v. Horner,* 30 Ill. 429, the court stated that it had carefully reviewed the law and saw no reason to modify its previous conclusion, nor to again discuss the question whether or not the promise was unconditional. In *Walker v. Freeman,* 209 Ill. 17, which related to the making of a like new promise to pay a promissory note, it was held that a promise to pay every cent was not made conditional by the statement that the maker would pay when he was able, and the like. In *Buchholz v. Feustel,* 179 Ill. App. 396, this court held that a promise, "I will pay you when I get the big church built," only fixes the time when he will pay, and was not a conditional but an absolute promise and made the maker liable, while, if he had said: "If I get the contract to build the big church, I will pay you," that would have been a conditional promise and it would have been essential to prove that he did get the contract to build the big church. We find nothing in the Illinois decisions not in harmony with the views expressed in the cases we have above cited.

But this instrument was made in Wisconsin and is to be construed by the laws of that State, and appellant contends that in Wisconsin this was a conditional contract and that the money was not due if the farm was not sold. Appellant relies on *Blake v. Coleman,* 22 Wis. 415. That was a suit on a promissory note in the usual form, but there was indorsed on the back thereof and shown by parole to have been there when the note was signed, these words: "The conditions of the

within note are as follows: L. S. Blake or bearer is not to ask or expect payment of said note until his Coleman's, old mill is sold for a fair price." The oral proof showed that defendant gave this note for a fanning mill, which he bought of plaintiff, and that defendant had an old fanning mill on hand when he gave this instrument. The court held that this condition qualified the note, and that the action could not be sustained without showing that, the condition had been fulfilled. The case then was that defendant was induced to buy a new mill by an agreement that he should not pay for it until he sold the old one. It would more resemble the case before us if the $3,000 here agreed to be paid arose out of the purchase of this farm by Allen. In *Corbett v. Clark*, 45 Wis. 403, an order, otherwise absolute, for the payment of money contained these words: "And take the same out of our share of the grain." The long discussion there, and the numerous authorities cited and discussed, lead us to the conclusion that the Supreme Court of Wisconsin is in harmony with the other authorities we have before cited. At the conclusion of the discussion the court said: "By a proper construction of these words in the bill, and by the authorities, we are clearly of the opinion that this order is a valid bill of exchange, and is not payable out of a particular fund or conditionally, but absolutely, and that the words are used merely in reference to the means by which the appellants, the acceptors, might reimburse themselves for its payment, and that the defenses set up were unavailable." Moreover there is no proof that the common law does not prevail in Wisconsin, and the presumption arises that it does prevail there. *Schlee v. Guckenheimer*, 179 Ill. 593; *Dalton v. Taliaferro*, 101 Ill. App. 592.

Claimant further proved that at the date of this note, her mother, Catherine L. Allen, the other maker of the note, had for many years been afflicted with a

disease which made her incapable of much bending of her knees or her elbows; that her hands were much drawn out of shape; that much of the time she could not walk; that she could not wash herself, dress herself, or comb her own hair; that part of the time she required assistance in feeding herself at the table; that she suffered pain which made it necessary that her limbs be frequently massaged; that she had to have pads between her knees and between her ankles, that she had to have the bed clothing upon which she lay kept very smooth and free from wrinkles; that these services had generally been performed for her by claimant for many years; that Allen was in the ice business and had hired men living in the home; that claimant not only had general care of her mother during the daytime, but usually did all the housework, though sometimes when extra men were employed a man was also hired to assist. Appellant says that for aught that appears she may have been paid for these services. True, but there was no proof that she was paid and no presumption of payment. The proof shows that this note was prepared by a nephew at the instance of the mother, and it is a reasonable conclusion that it was intended to compensate claimant for these services in the family and to the mother. The giving of this instrument precludes any claim that these services were rendered under the family relation. While claimant was not required to introduce evidence of a consideration, further than that covered by the words "value received" in this note, yet she saw fit to show what was evidently the real consideration. We are of opinion that the estate should not now be permitted to say that her parents intended to mock claimant by a promise to pay her $3,000 which the father might defeat by simply failing to sell his farm. We conclude that the contract, whether it be a negotiable promissory note or not, implies that the father was to sell his farm. The note was dated May 10, 1908.

Allen died February 16, 1915, and the mother died March 21, 1917. The court properly held that a reasonable time for the sale of the farm had elapsed. Even if the court might reasonably have held that interest at 5 per cent per annum began to run with the death of Allen, yet at the request of claimant, the court only allowed interest from the date of the death of the mother, more than 2 years later.

Appellee also filed a claim against her father's estate for nursing her mother after the date of the note here sued on. That claim was allowed in the county and circuit courts. We affirmed the judgment in *Allen v. Estate of Allen*, 215 Ill. App. 653. The Supreme Court denied a certiorari. Nothing we said in that case conflicts in principle with our opinion in this case.

The judgment is affirmed.

*Affirmed.*