*In re* ESTATE OF RICHARD A. MORROW (John Morrow *et al.*, Plaintiffs-Appellees, v. The Estate of Richard A. Morrow, Deceased, Defendant-Appellant).

Second District   No. 86—0084

Opinion filed December 10, 1986.

Samuel W. Witwer, Jr., and Brian M. Waldron, both of Witwer, Moran, Burlage & Witwer, of Chicago, for appellant.

Steven N. Peskind, of David P. Peskind, Ltd., of Aurora, for appellees.

JUSTICE REINHARD delivered the opinion of the court:

The estate of Richard A. Morrow brings this interlocutory appeal pursuant to Supreme Court Rule 304(b)(1) (103 Ill. 2d R. 304(b)(1)) from the trial court's allowance of the $48,000 claim of the deceased's parents, claimants John and Pauline Morrow, based on a written agreement between claimants and the deceased and his wife, Patsy J. Morrow. The issues raised by the estate are (1) whether the claim should have been allowed where the agreement depends on the future sale of subdivision lots and other uncertain events, (2) whether Patsy Morrow, executor of the estate, should be allowed to subrogate to the rights of the holder of the mortgage on the subdivision real estate as she paid the $102,000 mortgage with her own funds and should, therefore, have a claim against the estate, and (3) whether the sale of the property prior to completion of this appeal will create absolute title in third parties thereby placing them "beyond recall" if this court should reverse the order below.

Richard A. Morrow died March 17, 1982. Under the terms of his will, his widow was named executor. The only significant asset of the estate is a subdivision in La Salle County known as Country View Estates. The deceased was the sole beneficiary of a land trust holding the real estate, which is a probate asset of the estate in its entirety. Richard and Patsy Morrow had subdivided the tract into 33 half-acre and one-acre lots and advertised the lots as being improved with water, electricity, telephone, gas, paved streets and street lights. Claimant, John Morrow, provided engineering work, contracting work, and machinery work in developing the subdivision, but furnished no material. On December 26, 1978, Richard and Patsy Morrow entered into a contract with the claimants. The contract stated, in pertinent part:

"WHEREAS, JOHN C. MORROW, one of the Parties of the Second Part, has, as an independent contractor, heretofore devoted substantial time and labor to the planning, design and engineering of said development, and has devoted and will continue to devote substantial time and labor and the use of machinery in the installation of required subdivision improvements in said development, and has not heretofore received compensation for his time and efforts and the use of the machinery owned by the Party of the Second Part; and

WHEREAS, the parties hereto have heretofore agreed that the compensation to be paid to the Party of the Second Part, JOHN C. MORROW, for his labors and for the use of his equipment in the development of said subdivision should be in the amount of $1,500.00 per lot, payable to the Party of the Second

Part, JOHN C. MORROW, as and when each lot in said subdivision is sold in accordance with the further terms of this Agreement;

* * *

2. The Parties of the First Part agree to pay to the Party of the Second Part, JOHN C. MORROW, the sum of $1,500.00 per lot as each lot in said subdivision is sold, said sum to be paid to the Party of the Second Part within ten days after delivery of deed by the Parties of the First Part to the purchaser or purchasers of each lot in said subdivision. In the event that any lot or lots in said subdivision are sold by the Parties on [sic] the First Part on Installment Contract, the Party of the Second Part shall become entitled to payment hereunder upon full and final payment under any such installment contract or contracts.

* * *

3. All payments becoming due and payable hereunder shall be paid to the Party of the Second Part, JOHN C. MORROW, during his lifetime. In the event that the said JOHN C. MORROW shall die prior to the consummation of the sale of the last lot in said subdivision, payments hereunder shall become due and payable to PAULINE MORROW, during her lifetime. Upon the death of the last to die of the said JOHN C. MORROW and PAULINE MORROW, the obligations imposed hereunder on the Parties of the First Part shall terminate and this Agreement shall thereupon terminate and be of no further force or effect."

The agreement ended by stating that it would terminate upon (a) the sale of the last lot in the subdivision or (b) the death of the last to die of John or Pauline Morrow. The claimants filed a claim for $48,000 against the estate on August 4, 1982, based on the written agreement.

At trial, testimony was presented that one lot in the subdivision was sold prior to Richard Morrow's death at a price of $13,500, and the claimants received their $1,500 at the time of the sale. Patsy Morrow testified that she has been unsuccessful in her efforts to sell the remaining 32 lots, despite listing them with a local broker, advertising them in local papers, and steadily dropping the price. She has also been unsuccessful in attempting to have the site rezoned for mobile home use. She also testified that she and her husband had invested approximately $200,000 in purchasing and improving the property and that the Bank of Yorkville was holding two certificates of deposit worth $102,000, which were her personal property, for the balance

due on the mortgage on the property. She testified that shortly after Richard's death, she and John Morrow had a conversation at which John demanded full payment from the estate for his $1,500 per lot, or $48,000. She indicated to him that she would honor the terms of the original agreement, paying $1,500 as each lot was sold. John then became abusive, threw her off his property, and subsequently filed a claim against the estate.

John Morrow testified that the subdivision is in terrible condition and has not been mowed and that Patsy Morrow has refused to sell individual lots, but wanted to sell the entire property as a whole. Frank Barker, a real estate broker, testified that he was representing Patsy Morrow in an effort to sell the property. He stated that the only inquiries about the property had been regarding lots upon which mobile homes could be placed. He stated that the location was not good for a subdivision as the property was adjacent to a correctional facility and the village of Sheridan, Illinois. He estimated that, if the zoning remained single-family dwelling, the lots were worth $2,500 to $3,000. If zoned for mobile homes, the lots would probably be worth $3,500 to $4,500.

Following the trial, the court entered an order on December 30, 1985, allowing the claim and ordering the executor to sell the remaining lots within six months. If not sold within that time, the lots were to be sold at public auction.

■ The estate first argues that the claim based on the contract was not an absolute debt of the deceased and was improperly allowed under section 18—4 of the Probate Act of 1975. Section 18—4 provides:

> "A claim against a decedent's estate that is not due may be filed and allowed and paid out of the estate as other claims but interest which has been included as a part of the principal obligation, computed from the time of the allowance of the claim to the time when it would have become due, shall be deducted." Ill. Rev. Stat. 1985, ch. 110½, par. 18—4.

To be allowed as a claim against an estate, a claim must be based upon an absolute liability of the deceased, though the liability does not accrue during the statutory claims period. (*Chicago Title & Trust Co. v. Corporation of the Fine Arts Building* (1919), 288 Ill. 142, 155-56, 123 N.E. 300; *In re Estate of Mackey* (1985), 139 Ill. App. 3d 126, 128, 487 N.E.2d 81.) Debts of a decedent which accrue or mature after his death, but which may never come due, are merely contingent claims and cannot successfully be filed as claims against a decedent's estate. (*Puhrman v. Ver Vynck* (1981), 99 Ill. App. 3d 1130, 1133, 426

N.E.2d 921.) A contingent claim is defined as one in which liability is dependent upon the uncertain occurrence of a future event, the happening of which is not within the control of either party. *Sanders v. Merchants State Bank* (1932), 349 Ill. 547, 570, 182 N.E. 897; *In re Estate of Mackey* (1985), 139 Ill. App. 3d 126, 128, 487 N.E.2d 81; *In re Estate of Rice* (1981), 96 Ill. App. 3d 1137, 1139-40, 421 N.E.2d 1034.

■ Here, the contract between the parties does not create an absolute liability of the deceased of $48,000. The contract provided that, as and when each lot was sold, deceased and his wife, Patsy, would owe the claimants the sum of $1,500 to be paid within 10 days after delivery of the deed by Richard and Patsy Morrow to the purchaser or purchasers of each lot in the subdivision. The agreement was to terminate upon the death of both of the claimants. Therefore, as the obligation to make each $1,500 payment only arose upon the sale of each lot in the subdivision or final payment on an installment contract for sale of a lot and was contingent upon one of the claimants being alive at the time of the sale or final payment, this contract did not create an absolute liability of the deceased for $48,000. See *Hess v. Federal Tool Corp.* (1965), 56 Ill. App. 2d 155, 158, 205 N.E.2d 739; *Bocock v. Leet* (1917), 210 Ill. App. 402, 413-14.

The claimants argue that the case of *Allen v. Estate of Allen* (1920), 217 Ill. App. 260, is close to this case factually and requires a different result. In *Allen,* the decedent and his wife had signed a negotiable promissory note which was given to their daughter and stated, "I promise to pay Emma F. Allen for value received, three thousand dollars ($3,000) without interest. To be paid when the farm is sold." (217 Ill. App. 260, 262.) At the time of the decedent's death the farm had not yet been sold. The court, reciting some Illinois precedent but applying Wisconsin law as the instrument was made in Wisconsin, held that the promise to pay was absolute as the instrument stated "when the farm is sold" and not "if the farm is sold." The court cited cases where promissory notes indefinite as to time of payment were held to be due within a reasonable time. The court then determined that a reasonable time for sale of the farm had elapsed and, as both decedent and his wife had died, the amount of the note, with interest from the date of the wife's death, was due to the claimant from her father's estate. (217 Ill. App. 260, 271-72.) The decision was based on the court's determination that the note was due and not on the predecessor of the section of the Probate Act involved here.

The situation in this instant case is entirely different. The agreement here is not a negotiable promissory note which is, on its face, an

absolute promise to pay. The court does state in *Allen,* "[w]e conclude that the contract, whether it be a negotiable promissory note or not, implied that the father was to sell his farm." (*Allen v. Estate of Allen* (1920), 217 Ill. App. 260, 271.) In *Allen,* the court determined the indefiniteness of the term "when the farm is sold" to mean within a reasonable time. Here, also, the agreement clearly contemplates that the lots are to be sold sometime in the future. This does not, however, under these facts, make the deceased's liability for the claimants' $48,000 claim absolute as the liability is conditional on one of the claimants being alive at the time the lots are sold or final payment is made on any installment contracts to purchase lots. The clear, unambiguous terms of the contract provide that the claimants would be paid $1,500 "as and when each lot in said subdivision is sold" to be paid after delivery of deed to the purchaser, the agreement to terminate upon the death of the last to die of the claimants. This indicates that the parties anticipated that the claimants might not receive payment for all of the lots before their death and cannot be read to create an absolute liability of the deceased.

■ An instrument should be given a fair and reasonable interpretation based on consideration of all of its language and provisions. (*Shelton v. Andres* (1985), 106 Ill. 2d 153, 159, 478 N.E.2d 311.) The rights of the parties are limited by the terms expressed in the contract, and a court may not rewrite a contract to suit one of the parties, but must enforce the terms as written. (*A. A. Conte, Inc. v. Campbell-Lowrie-Lautermilch Corp.* (1985), 132 Ill. App. 3d 325, 329, 477 N.E.2d 30.) The claim here is contingent and not allowable against the estate. The order of the trial court allowing the claim must be reversed.

■ The estate also raises as an issue on appeal that Patsy Morrow is entitled to equitable subrogation and should be subrogated to the rights of the Bank of Yorkville, which had a claim of $102,000 against the estate until Patsy paid the obligation with her own funds. The question of Patsy's right of subrogation was mentioned in a hearing on other matters before the trial court December 30, 1985. The judge stated that Patsy would be entitled to a surviving spouse's award and to subrogation against the estate unless that was barred. He specifically stated, however, that he was not passing on the issue of whether she was entitled to reimbursement for the $102,000 paid on the mortgage and no order was entered. A claim for subrogation was not filed below nor was a request made for a widow's award, and this issue, therefore, has not been ruled on by the trial court and is not before this court. We also note that this issue was not mentioned

in the notice of appeal filed by the estate and cannot be considered by us for that reason as well. See *Ferguson v. Riverside Medical Center* (1985), 111 Ill. 2d 436, 442, 490 N.E.2d 1252.

■ Finally, while the estate listed in the statement of issues presented for review portion of its brief whether, even if we reverse the order below, a sale of the property prior to completion of the appeal will place the property beyond recall, the estate has not presented any argument in the brief on this statement thereby waiving our review of the issue. 103 Ill. 2d R. 341(e)(7); *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 483, 468 N.E.2d 1162.

For the foregoing reasons, the order of the trial court allowing the $48,000 claim of John and Pauline Morrow against Richard Morrow's estate is reversed, and the cause is remanded.

Reversed and remanded.

NASH, P.J., and HOPF, J., concur.